**Edithmae GILCHRIST, Administratrix of the Estate of John J. Gilchrist, deceased, Plaintiff,**

v.

**CITY OF LIVONIA, a municipal corporation, Gary David Wood, Ronald Edward Proudlock and Richard J. Berry, Defendants.**

**Civ. No. 83–CV–1697–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 11, 1984.

Stephen N. Leuchtman, Southfield, Mich., for plaintiff.

Kenneth M. Zorn, Arthur G. Behm, Detroit, Mich., for defendants.

## OPINION AND ORDER

COHN, District Judge.

This case involves a claim by plaintiff, administratrix of the estate of her deceased husband, John J. Gilchrist (Gilchrist), for damages allegedly suffered as a consequence of his suicide. The individual defendants are police officers of the City of Livonia. Plaintiff alleges that Gilchrist's suicide resulted from the defendants' failure to take him into custody after a call that he was acting in an irrational and dangerous manner.

The case was filed in state court, removed to federal court, then remanded because the removal was improper. Defendants' removed again on the basis of plaintiff's claims under 42 U.S.C. § 1983. Defendants wish to avoid being sent back to state court for a second time and have been protective of plaintiff's federal claims. The individual defendants, against whom both state law and § 1983 claims are pending have moved to dismiss only the state law claims. The City of Livonia, previously granted summary judgment on the state law claims, has not moved to dismiss the § 1983 claim.

Despite defendants' failure to test the federal claims which form the basis of the court's jurisdiction, the parties were directed to brief the issue of whether the failure of the police to take Gilchrist into custody under the circumstances described in the complaint implicates a constitutional right. I conclude that it does not. Neither side called my attention to the cases most relevant to the issue.

### I.

Plaintiff's complaint alleges that on January 14, 1979, Gilchrist returned to his home and began smashing furniture and threatening suicide. Since Gilchrist had a long history of psychiatric problems and suicidal tendencies, his wife called the police. Four officers arrived; they were advised that Gilchrist had a large supply of firearms and that his mental condition was such that he should be hospitalized for his own safety and the safety of others. The officers confiscated a number of firearms but did not take Gilchrist into custody. After the officers left, Gilchrist became even more irrational and began beating his wife. She called the police again. While the police were on their way, Gilchrist got dressed, put on his hat and coat, and sat on the sofa, allegedly waiting for the police to come and take him away. Two of the four officers who came in response to the first call arrived in response to the second call. They again refused to take Gilchrist into custody, indicating to his wife that he should be left alone to "cool down". Shortly after the officers left the home, Gilchrist shot himself.

### II.

As a general rule, police officers are not liable for failure to arrest a third person. "The duty of a law enforcement officer to preserve the peace is one which is owed to the public generally and not to particular individuals; for breach of that duty an officer is not liable to any particular individual but only to the public". *Zavala v. Zinser*, 123 Mich.App. 352, 356 (1983); *South v. Maryland*, 59 U.S. (18 How.) 386, 403, 15 L.Ed. 433 (1855). This rule of non-liability is subject to an exception where it can be said that a "special relationship" exists between the plaintiff or victim and the police. See Note, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv.L.Rev. 821, 122–28 (1981).

To state a claim under 42 U.S.C. § 1983, plaintiff must not only allege that defendants breached a duty owed to Gilchrist; she must show deprivation of a right under the constitution. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of due care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689,

2692, 61 L.Ed.2d 433 (1979). Plaintiff claims that the officers' refusal to take Gilchrist to a hospital after being alerted to his unstable condition constituted "gross negligence" and "deliberate indifference" in violation of his rights under the due process clause of the Fourteenth Amendment.

To establish a due process violation, at a minimum plaintiff is required to show the existence of a "special relationship" between Gilchrist and the police.

> "[T]he due process clause of the Constitution provides no basis for imposing liability through the application of the civil rights statutes on state officers who either negligently or even recklessly facilitate the criminal actions of a third party, absent some special relationship between the victim and the criminal or between the victim and the state officer."

*Wright v. City of Ozark,* 715 F.2d 1513 (11th Cir.1983).

■ However, a police officer's duty resulting from a "special relationship" is not necessarily sufficient to establish liability under 42 U.S.C. § 1983. Plaintiff must also show that the police acted with "deliberate indifference"; there is no liability for merely negligent nonfeasance. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *rehearing denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785, the Supreme Court held that "deliberate indifference" to medical needs of prisoners would give rise to an eighth amendment violation resulting in § 1983 liability. 429 U.S. at 104, 97 S.Ct. at 291. The Supreme Court noted the relationship of dependency existing between the inmates and prison authorities: "An inmate must rely on prison authorities to treat his medical needs, if the authorities fail to do so, those needs will not be met". Although *Estelle* did not involve the issue of police nonfeasance in the context of the due process clause, "when the Court does decide the issue, it is ... likely to establish a gross negligence threshold similar to the 'deliberate indifference' standard" established in that case. See *Note, supra,* at 831.

Similarly, in *Jamison v. McCurrie,* 565 F.2d 483 (7th Cir.1977), a widow brought a § 1983 action against the City of Chicago and fourteen police officers on behalf of her deceased husband. The husband had been killed by James O'Malley, a Chicago fireman with a history of mental illness. There was testimony at trial that O'Malley's son had been to the 8th District police station on each of three days preceding the shooting to report that his father had threatened him and his brother with a gun. Plaintiff argued that the failure of the police to take O'Malley into custody after being informed that he was acting dangerously denied plaintiff's decedent his Fourteenth Amendment right not to be deprived of life without due process of law. The Court of Appeals affirmed the judgment entered on a jury verdict for the police officers. The Court of Appeals did not discuss whether there existed a "special relationship" between O'Malley and the police officers although it noted that the police knew O'Malley to be irrational and violent. The Court of Appeals said

> "[t]here is no cause of action for mere negligence on the part of the police officers in a case such as this. The plaintiff must show that their misbehavior was either intentional or in reckless disregard of his constitutional rights ... [although] police nonfeasance, if purposeful, might be the basis for a constitutional tort claim."

565 F.2d at 486.

### III.

■ Plaintiff's due process claim must fail because she cannot show under any state of facts alleged that the police owed Gilchrist a duty any greater than that owed the public at large—i.e., there was no special relationship. Plaintiff argues that since the defendants saw that Gilchrist was mentally ill, Michigan statutes imposed an affirmative duty on them as police officers to get him psychiatric treatment.

■ A state statute imposing an affirmative duty on police officers to protect a defined class of citizens might create a

basis for imposing liability analogous to a special relationship. See *Peck v. United States*, 470 F.Supp. 1003 (S.D.N.Y.1979) (F.B.I. agents not liable to plaintiffs for failure to warn of planned attack of which they were aware—no duty owed in absence of statute or special relationship). However, Mich.Stats.Ann. §§ 14.800(400a), (401) and (427), [M.C.L.A. §§ 330.1400a, 330.-1401, 330.1427] relied on by plaintiff as creating an affirmative duty, does not require a police officer to take persons requiring psychiatric treatment into custody; what is to be done under the circumstances is left to the discretion of the officer. Contrary to plaintiff's assertion, the statute imposes no duty. Therefore, in the absence of an affirmative duty it cannot be said that the failure to take plaintiff to the hospital gave rise to § 1983 liability.

> "While denial of medical treatment to one who is incarcerated may at times amount to cruel and unusual punishment in violation of the 8th Amendment, a person who is not in state custody simply has no constitutional right to be driven to a hospital by a police officer on request."

*La Plante v. Frazier*, 564 F.Supp. 1095 (E.D.Pa.1983). There simply was no duty on the part of defendants here, other than the duty of a law enforcement officer owed to the public generally.

### IV.

■ Plaintiff also claims that defendants' actions violated Gilchrist's rights under the equal protection clause of the Fourteenth Amendment. Plaintiff argues that if Gilchrist had been physically ill, rather than mentally ill, defendants would have taken him to a hospital. As stated in *Wright, supra*, at 1516:

> "[a]lthough the defendants may have owed no duty under the due process clause to protect Wright from a rapist, we assume that they did owe a duty under the equal protection clause not to discriminate in providing law enforcement services. In order to prevail on such a claim, however, [plaintiff] would have to show 'intentional or purposeful discrimination.' In her complaint plain-

tiff alleges not one fact from which a purpose to discriminate either against her or against women or against any other class could be inferred. Thus, her equal protection allegation fails."

(citations omitted). See also Note, *supra*, at 830 n. 43. There are no facts alleged in the complaint from which one could conclude that the defendants purposefully discriminated in their treatment of a mentally ill person.

### V.

Lastly, plaintiff claims that the City of Livonia is liable under § 1983 because it "had a municipal policy of neglect of the mentally ill which was the cause of the unconstitutional actions taken by its employees."

■ Although a political subdivision such as the City of Livonia is subject to suit as a "person" in a § 1983 suit, *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "[c]ongress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691, 98 S.Ct. at 2036.

■ On the facts alleged in her complaint, plaintiff does not establish a constitutional violation created by the City of Livonia's municipal policy—or more accurately, absence of a policy—regarding the mentally ill. Plaintiff claims only that Livonia does not require an officer to transport a mentally ill person in need of treatment to a hospital, contrary to the requirements of the Michigan Mental Health Code. However, this practice does not violate the Michigan statute; as stated, *supra*, that statute is permissive. Plaintiff also fails to say that this "policy" discriminates in any way against the mentally ill. Plaintiff does not allege that the City of Livonia's policy regarding the mentally ill differs from its policy regarding treatment of any other segment of the population, nor does plaintiff allege that the City's purpose is to discriminate against the mentally ill.

## VI.

Since the federal claims must be dismissed all that is left in the complaint are the state law claims against the individual defendants. These claims are more appropriately to be decided in the state court from which the case was removed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the claims under 42 U.S.C. § 1983 are DISMISSED and this case is REMANDED to the Wayne County Circuit Court.

SO ORDERED.