MORSE v CITY OF MOUNT PLEASANT

Docket No. 93680. Submitted February 11, 1987, at Grand Rapids. Decided June 15, 1987. Leave to appeal applied for.

Howard Sageman and Wayne Van Dyke, police officers for the City of Mount Pleasant, came upon Kenneth J. Morse and two companions in an alley in the city. Morse apparently was incapacitated by intoxication. Sageman and Van Dyke had the choice of taking Morse into protective custody and arranging for transportation to an approved medical, emergency or transfer facility for care or leaving him to his companions. They chose to leave him with his companions. The companions subsequently abandoned Morse, who, lying unconscious for the night with his mouth and nose pressed to the ground, died of suffocation. Violet M. Morse, personal representative of the estate of Kenneth J. Morse, deceased, filed a wrongful death action against the City of Mount Pleasant, Sageman and Van Dyke in Isabella Circuit Court. Defendants filed a motion for summary disposition claiming governmental immunity. The court, Paul F. O'Connell, J., granted summary disposition in favor of the defendants. Plaintiff appealed the grant of summary disposition in favor of defendants Sageman and Van Dyke.

The Court of Appeals *held:*

Law enforcement officers are required by statute to take incapacitated persons into protective custody when encountered in a public place. An officer has no discretion in such a situation, and the taking of the incapacitated person into protective custody therefore is a ministerial act. Governmental immunity does not apply to police officers performing, or failing to perform, ministerial acts.

Reversed and remanded.

REFERENCES

Am Jur 2d, Sheriffs, Police and Constables § 159.

Am Jur 2d, Statutes §§ 194, 195.

Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as a result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.

Personal liability of policeman, sheriff, or other peace officer, or bond, for negligently causing personal injury or death. 60 ALR2d 873.

SAWYER, J., dissented as to the majority's conclusion that the police officers were performing ministerial acts as opposed to discretionary acts and, therefore, were not entitled to governmental immunity. He would hold that a police officer's determination of what type of action to take when encountering an incapacitated person in a public place is discretionary-decisional and is precisely the type of action that governmental immunity was designed to protect. He would affirm.

1. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — INCAPACITATED PERSONS — PROTECTIVE CUSTODY.

Law enforcement officers are required by statute to take incapacitated persons into protective custody when encountered in a public place; there is no discretion involved on the part of an officer in such a situation and, therefore, governmental immunity is not available to protect officers where they fail to perform their statutory duty (MCL 333.6501[1]; MSA 14.15[6501][1]).

2. STATUTES — JUDICIAL CONSTRUCTION.

A statute is not open to construction by the courts unless the language used in the statute is ambiguous, i.e., unless reasonable minds could differ as to its meaning.

*Henry G. Kubin,* for plaintiff.

*Lynch, Gallagher, Lynch, Shirley & Martineau* (by *William J. Shirley*), for defendants.

Before: R. M. MAHER, P.J., and SAWYER and R. L. TAHVONEN,* JJ.

PER CURIAM. Plaintiff appeals as of right from the June 25, 1986, order of summary disposition on the ground of governmental immunity entered in favor of defendants Howard Sageman and Wayne Van Dyke by the Isabella Circuit Court pursuant to MCR 2.116(C)(7). The facts, as alleged in plaintiff's pleadings, are as follows.

On or about October 8, 1982, plaintiff's decedent, Kenneth James Morse, became visibly intoxicated as a result of the consumption of liquor. Defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dants Sageman and Van Dyke, who were acting in their official capacities as police officers for the City of Mt. Pleasant, came upon Morse in an alley within the City of Mt. Pleasant. Defendants knew, or should have known, that Morse was incapacitated by intoxication.

Seeing Morse so intoxicated, defendants were faced with the choice of taking him into protective custody and arranging for transportation to an approved medical, emergency or transfer facility for care or leaving him to his companions. Defendants did not take Morse into protective custody, but turned him over to his two companions.

After turning Morse over to his companions, defendants left the area. Morse was subsequently abandoned by his companions. Lying unconscious for the night with his mouth and nose pressed to the ground, Morse died of suffocation. The death of Morse was proximately caused by the failure of the defendants to take him into protective custody.

The complaint was filed on April 25, 1983. Defendants' answer, filed May 19, 1983, included an affirmative defense of governmental immunity as to the defendant police officers. On March 21, 1986, defendants filed their motion for summary disposition under *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). The trial court's decision to grant that motion is the sole issue on appeal.[1]

In *Ross,* our Supreme Court held that lower level governmental officials, employees and agents are immune from tort liability only when they are

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority,

---

[1] Plaintiff has not raised the issue of the trial court's previous order of summary disposition as to the governmental entity, the City of Mt. Pleasant, also under MCR 2.116(C)(7).

2) acting in good faith; and

3) performing discretionary, as opposed to minis-
terial acts. [*Ross, supra,* 633-634.][2]

In this case, it is undisputed that the defendants
were acting in the course of their employment and
their authority. It is also undisputed that the
officers were acting in good faith. The only issue
raised in the trial court is whether the officers
were performing a "discretionary" or "ministerial"
function in their decision to turn the care of Morse
over to his two companions.

In *Ross,* our Supreme Court explained:

An individual who decides whether to engage in
a particular activity and how best to carry it out
engages in discretionary activity. However, the
actual execution of this decison by the same indi-
vidual is a ministerial act, which must be per-
formed in a nontortious manner. In a nutshell, the
distinction between "discretionary" and "ministe-
rial" acts is that the former involves significant
decision-making, while the latter involves the exe-
cution of a decision and might entail some minor
decision-making. Here too, for clarity, we would
add the word "operational" so the operative term
would be "ministerial-operational" acts. [*Ross, su-
pra,* 634-635.]

Plaintiff argues that taking Morse into protective
custody was a ministerial act; that defendants had
no discretion to leave him in the custody of his
companions. We agree.

1978 PA 368, which contains provisions substan-
tially similar to provisions of the former Public
Health Code, provides:

An individual who appears to be incapacitated

---

2 There is no dispute that *Ross* applies to plaintiff's claim. See *Hyde
v University of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847
(1986).

in a public place *shall* be taken into protective custody by a law enforcement officer and taken to an approved service program, or to an emergency medical service, or to a transfer facility pursuant to subsection (4) for subsequent transportation to an approved service program or emergency medical service. When requested by a law enforcement officer, an emergency service unit or staff *shall* provide transportation for the individual to an approved service program or an emergency medical service. This subsection *shall* not apply to an individual who the law enforcement officer reasonably believes will attempt escape or will be unreasonably difficult for staff to control. [MCL 333.6501(1); MSA 14.15(6501)(1). Emphasis added.]

We believe that this statute unambiguously requires law enforcement officers to take incapacitated persons into protective custody when encountered in a public place. No discretion is left to the officer upon encountering an incapacitated person in a public place. Thus, no immunity is provided under *Ross.*

Defendants argue, however, that this construction of the Public Health Code ignores the fact that significant decision-making or discretion remains with law enforcement officers encountering incapacitated persons in public. According to defendants, the emphasized word "shall" in truth means "may." Thus, defendants argue that they were not obliged to take Morse into custody, but were merely entitled to do so under Michigan law. We disagree.

First, we note the well-established rule that a statute is not open to construction by the courts unless the language used in the statute is ambiguous—unless reasonable minds could differ as to its meaning. *Sam v Balardo,* 411 Mich 405, 418; 308 NW2d 142 (1981). As we have previously observed, the statute in question unambiguously requires

law enforcement officers to effectuate protective custody in these circumstances. We are therefore unable to construe the statute as merely allowing officers to effectuate protective custody if they so choose.

Moreover, even if we were to proceed with construction of the statute, we would reach the same result. The Legislature was certainly cognizant that the word "shall" is construed as imposing a mandatory, rather than a permissive, duty. Michigan courts have repeatedly done so in the past. *State Highway Comm v Vanderkloot,* 392 Mich 159, 180; 220 NW2d 416 (1974), and cases cited therein, *Hadley v Ramah,* 134 Mich App 380, 387; 351 NW2d 305 (1984), and cases cited therein. The Legislature is presumed to know of and legislate in harmony with existing law. *In re Colon,* 144 Mich App 805, 811; 377 NW2d 321 (1985).

Moreover, it is clear that the Legislature was aware of a distinction between the words "shall" and "may," since both words are used in the statute at issue. Section 6501(2) of 1978 PA 368 provides, for instance:

> (2) A law enforcement officer *may* take an individual into protective custody with that kind and degree of force which would be lawful were the officer effecting an arrest for a misdemeanor without a warrant. In taking the individual, a law enforcement officer *may* take reasonable steps to protect himself or herself. The protective steps *may* include a "pat down" search of the individual in his or her immediate surroundings, but only to the extent necessary to discover and seize any dangerous weapon which may on that occasion be used against the officer or other individuals present. These protective steps *shall* be taken by the law enforcement officer before an emergency service unit or staff provides transportation of an individual to an approved service program or

emergency medical service. [MCL 333.6501(2); MSA 14.15(6501)(2). Emphasis added.]

Finally, we observe that 1977 PA 110 amended the Public Health Code existing at that time. Prior to the enactment of 1977 PA 110, the Public Health Code provided:

A person who appears to be incapacitated *may* be taken by a law enforcement officer or an emergency service unit to the person's home, to an approved service program, or to an emergency medical service. In taking the person, a law enforcement officer or an emergency service unit may take reasonable steps to protect themselves. . . . The taking of a person to the person's home, to an approved service program, or emergency medical service under this subsection is not an arrest. An entry or other record shall not be made to indicate that the person was arrested or charged with . . . a crime. . . . [1976 PA 205, 1970 CL 325.753(1).]

In construing an amendment to a statute, it is presumed that a change in phraseology reflects a legislative intent to change the meaning of the statute. *Greek v Bassett,* 112 Mich App 556, 562; 316 NW2d 489 (1982), lv den 414 Mich 961 (1982), and cases cited therein. Here, we must presume that the change of the word "may" to "shall" reflected a legislative intent to make it mandatory for law enforcement officers to take an incapacitated individual into protective custody.

We decline to follow *Marshall v Ellison,* 132 Ill App 3d 732; 477 NE2d 830 (1985), which construed similar language in an Illinois statute to merely permit officers to effectuate protective custody. Michigan law clearly requires that the word "shall" be interpreted in its mandatory sense. Moreover, *Marshall* is factually distinguishable in

that it is unclear whether the law enforcement officers involved therein were aware that the individual involved was incapacitated.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

Sawyer, J. *(dissenting).* I respectfully dissent.

Whereas I would agree with my colleagues in their interpretation of *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), I disagree with their reasoning when they conclude that the police officers were performing ministerial acts as opposed to discretionary acts and, therefore, were not entitled to governmental immunity. It is clear from the record that defendant police officers were faced with the decision whether to place the decedent in protective custody or to allow the decedent's friends to accompany him home. If they had decided to invoke MCL 333.6501; MSA 14.15(6501), they would have had to follow the statute and, therefore, be bound by the mandatory language found therein. It seems clear, however, that the determination of what type of action to take is discretionary-decisional and is precisely the type of action that governmental immunity was designed to protect.

The Supreme Court has opined:

Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.,* make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been

made, however, the execution thereof must be performed in a proper manner, *e.g.,* the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc. Since plaintiffs merely alleged negligent performance of a discretionary-decisional act, summary judgment for the individual officers was properly granted. [*Ross, supra,* pp 659-660.]

For the above-mentioned reasons, I would affirm.