MARKIS v CITY OF GROSSE POINTE PARK

Docket No. 102648. Submitted December 22, 1988, at Detroit. Decided
    October 16, 1989. Leave to appeal applied for.

On November 11, 1983, Grosse Pointe Park police officer Paul
    Konefeke stopped a car driven by Sara Conway and issued her
    a citation for driving through a red light. Approximately two
    hours later and while driving northbound on southbound I-275,
    Sara Conway struck a vehicle driven by Timothy Wayne Kelly.
    Kelly died as a result of the accident. Georgia Markis, personal
    representative of the estate of Timothy Wayne Kelly, deceased,
    filed suit against the City of Grosse Pointe Park and others in
    Wayne Circuit Court alleging that, at the time Conway was
    stopped by Konefeke, she was visibly intoxicated, had a dishev-
    eled appearance and slurred speech, and exhibited impaired
    sensory and motor skills, that the municipal defendants had
    implemented a de facto policy of not detaining residents of
    Grosse Pointe Park suspected of driving under the influence of
    liquor unless they had been involved in a high-speed chase or
    an accident, and that, by consciously disregarding the danger
    created by such a policy, defendants created a nuisance. Plain-
    tiff also alleged that, as a result of municipal policy or im-
    proper training, Officer Konefeke failed to ascertain that Con-
    way was driving while intoxicated and thereby carried out
    official municipal policy. Plaintiff further alleged that the mu-
    nicipal defendants acted with common knowledge and purpose
    in implementing the police training and procedures designed to
    encourage the nonarrest of residents suspected of driving under
    the influence of liquor and that such conduct, under color of
    state law, deprived the decedent of his civil rights, including his
    right to life. Plaintiff's final allegation was that the municipal
    defendants breached duties owed to the decedent and that their
    grossly negligent conduct proximately caused his death. Defen-
    dants moved for summary disposition, arguing that no relation-

REFERENCES

Am Jur 2d, Civil Rights §§ 16, 18, 19, 286; Municipal, County,
    School, and State Tort Liability §§ 111, 441-443, 461, 462; Sum-
    mary Judgment §§ 27, 29.
Failure to restrain drunk driver as ground of liability of state or
    local government unit or officer. 48 ALR4th 320.

ship existed that would give rise to a special duty to protect the
decedent and that plaintiff's allegation that defendants' actions
had violated the decedent's civil rights therefore failed to state
a claim on which relief could be granted. Defendants also
asserted that they were immune from tort liability under state
law and that plaintiff's assertions of negligence therefore failed
to state a claim on which relief could be granted. Defendants
finally contended that no evidence showed that Grosse Pointe
Park or its officials had a policy of deliberately failing to detain
residents suspected of driving under the influence of liquor. The
court, Henry J. Szymanski, J., denied the motion. Defendants
appealed by leave granted.

The Court of Appeals *held*:

1. Plaintiff failed to state a claim under 42 USC 1983 for
deprivation of civil rights on which relief could be granted. All
*defendants are entitled to summary disposition on this issue.*

2. The City of Grosse Pointe Park and its officials are entitled
to immunity from tort liability for activities related to the
operation of the police force. Plaintiff failed to state a claim for
negligence against the municipal defendants on which relief
can be granted.

3. Officer Konefeke owed no duty to the decedent to restrain
visibly intoxicated motorists. Plaintiff failed to state a claim for
negligence against Konefeke on which relief can be granted.
Konefeke is entitled to summary disposition as to plaintiff's
claims against him. Furthermore, even if Konefeke were other-
wise subject to liability on the basis of a claim of negligence, he
would be entitled to summary disposition on the basis of
governmental immunity.

Reversed and remanded for further proceedings on the issue
of intentional nuisance.

1. GOVERNMENTAL IMMUNITY — PLEADING — SUMMARY DISPOSITION.

A court in determining whether a plaintiff has pled sufficient
facts to overcome a claim of governmental immunity must
accept all well-pled allegations as true; summary disposition on
the basis of governmental immunity should not be granted
unless no factual development could furnish a basis for recov-
ery (MCR 2.116[C][7]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAILURE TO
STATE A CLAIM.

A motion for summary disposition brought pursuant to MCR
2.116(C)(8) tests the legal sufficiency of a claim; it must be
decided on the pleadings alone, with well-pled facts and reason-
able inferences drawn therefrom taken as true; the motion

should be denied unless the claim is clearly so unenforceable as a matter of law that no factual development could establish the claim and justify recovery.

3. GOVERNMENTAL IMMUNITY — GOVERNMENTAL ENTITIES — INDIVIDUAL EMPLOYEES.

Governmental immunity is not an affirmative defense but a characteristic of government that prevents imposition of tort liability; thus, a governmental entity should move for summary disposition pursuant to MCR 2.116(C)(8); if the defense of governmental immunity is raised on behalf of an individual employee, it is classified as an affirmative defense and should be raised pursuant to MCR 2.116(C)(7).

4. CIVIL RIGHTS — ACTIONS.

A plaintiff, in order to sustain a cause of action under 42 USC 1983 for deprivation of civil rights, must establish that (1) the defendant acted under color of state law, (2) the conduct deprived the plaintiff of constitutional rights, and (3) the deprivation of rights occurred without due process of law.

5. CIVIL RIGHTS — ACTIONS — FEDERAL LAW.

Any cause of action brought in state court under 42 USC 1983 requires review of federal law interpreting that federal statute.

6. CONSTITUTIONAL LAW — DUE PROCESS CLAUSE — STATE ACTION — PRIVATE ACTION.

The due process clause of the United States Constitution does not require a state to protect its citizens' lives, liberty, and property against invasion by private actors, nor does it require a state to guarantee a minimum level of safety and security; the clause serves to limit a state's power to act by forbidding a state itself to deprive individuals of life, liberty, and property without due process of law and cannot be read to impose an affirmative duty on the state to protect one individual from another or to impose liability for injuries that could have been prevented had the state chosen to provide protection; a state's failure to protect an individual against private violence does not violate the due process clause (US Const, Am XIV).

7. CIVIL RIGHTS — POLICE OFFICERS — INTOXICATED MOTORISTS — FAILURE TO ARREST.

There is no 42 USC 1983 cause of action for a violation of a constitutional right where the claim arises from an allegation of a failure to protect prospective victims from the dangers posed by private parties even where the party acting under the color of state law possesses some knowledge of an unspecified

potential for harm, nor is a special relationship sufficient to establish liability under 42 USC 1983 created when a police officer fails to arrest an allegedly intoxicated motorist and that motorist later injures a third party as a result of his intoxication; under such circumstances, the officer owes the injured party no greater duty than that owed the public at large.

8. GOVERNMENTAL IMMUNITY — MUNICIPAL CORPORATIONS — MUNICIPAL OFFICERS — POLICE DEPARTMENTS.

A municipality and its officials are entitled to governmental immunity from tort liability for activities related to the operation of the municipality's police force.

9. NEGLIGENCE — DUTY — QUESTIONS OF LAW.

A plaintiff, to establish a prima facie case of negligence, must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages, and (4) that the plaintiff suffered damages; a duty is a legally recognized obligation to conform to a particular standard of conduct towards another, and whether a duty exists is a question of law for the court.

10. NEGLIGENCE — DUTY — POLICE OFFICERS — ARREST — INTOXICATED MOTORISTS.

Generally, a public official's duty is owed to the public and not to any specific individual in society; thus, a policy officer's duty to restrain intoxicated motorists, being a duty owed to the public generally, does not create liability for an individual's injury arising from its breach.

11. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — DISCRETIONARY-DECISIONAL ACTS.

Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers; the determination of what type of action to take, e.g., make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to governmental immunity from tort liability.

*Bleakley & McKeen, P.C.* (by *Thomas H. Bleakley*), for plaintiff.

*Gelman, Friedman & Baumkel* (by *Candyce M. Ewing* and *Mark S. Baumkel*), for defendants.

Before: MacKenzie, P.J., and Cynar and M. E. Kobza,* JJ.

M. E. Kobza, J. Defendants bring this interlocutory appeal of the trial court's denial of their motion for summary disposition by leave granted. We reverse.

At 1:15 a.m. on November 11, 1984, a vehicle driven northbound on southbound I-275 by Sara Conway struck a vehicle driven by Timothy Kelly. Kelly died as a result of the accident. In her complaint, plaintiff alleged that approximately two hours before the accident Grosse Pointe Park police officer Paul Konefeke stopped Conway and issued her a citation for driving through a red light. Plaintiff alleged that, at the time she was stopped, Conway was visibly intoxicated, had a disheveled appearance and slurred speech, and exhibited impaired sensory and motor skills. Nevertheless, Officer Konefeke did not detain Conway, but permitted her to continue driving on the highway.

In the complaint, plaintiff alleged that the municipal defendants had implemented a de facto policy of not detaining residents of Grosse Pointe Park suspected of driving under the influence of liquor unless they had been involved in a high-speed chase or an accident and that, by consciously disregarding the danger created by such a policy, defendants created a nuisance. Plaintiff also alleged that, as a result of municipal policy or improper training, Officer Konefeke failed to ascertain that Conway was driving while intoxicated and thereby carried out official municipal policy.

* Circuit judge, sitting on the Court of Appeals by assignment.

In addition, plaintiff alleged that the municipal defendants acted with common knowledge and purpose in implementing the police training and procedures designed to encourage the nonarrest of residents suspected of driving under the influence of liquor and that such conduct, under color of state law, deprived plaintiff's decedent of his civil rights, including his right to life. Finally, plaintiff alleged that the municipal defendants breached duties owed to the decedent and that their grossly negligent conduct proximately caused his death.

In March, 1986, defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (8) arguing that no relationship existed that would give rise to a special duty to protect decedent and that plaintiff's allegation that defendants' actions had violated the decedent's civil rights therefore failed to state a claim on which relief could be granted. Defendants also asserted that they were immune from tort liability under state law and that plaintiff's assertions of negligence therefore failed to state a claim on which relief could be granted. The trial court denied the motion.

In June, 1987, defendants moved for summary disposition pursuant to MCR 2.116(C)(7),(8) and (10). In addition to the arguments raised in the previous motion, defendants contended that no evidence showed that Grosse Pointe Park or its officials had a policy of deliberately failing to detain residents suspected of driving under the influence of liquor. On August 11, 1987, the trial court again denied the motion.

Initially, we note that plaintiff's assertion that defendants are not entitled to this interlocutory appeal is without merit. Defendants' second motion for summary disposition was based at least in part on different grounds and was filed after dis-

covery had been completed. Defendants filed a timely application for leave to appeal the trial court's denial of their second motion, MCR 7.205(A), and this Court granted leave.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7),(8) and (10). The trial court determined that issues of material fact remained and that it could not conclude as a matter of law either that defendants were entitled to dismissal or that plaintiff had failed to state a claim upon which relief could be granted.

In determining whether a plaintiff has pled sufficient facts to overcome a claim of governmental immunity, the trial court must accept all well-pled allegations as true. A motion for summary disposition brought pursuant to MCR 2.116(C)(7) should not be granted unless no factual development could furnish a basis for recovery. *Stoick v Caro Community Hosp,* 167 Mich App 154, 160; 421 NW2d 611 (1988). A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of a claim. It must be decided on the pleadings alone, with all well-pled facts and reasonable inferences drawn therefrom taken as true. The motion should be denied unless the claim is clearly so unenforceable as a matter of law that no factual development could establish the claim and justify recovery. *Formall, Inc v Community Nat'l Bank of Pontiac,* 166 Mich App 772, 777; 421 NW2d 289 (1988). Governmental immunity is not an affirmative defense but a characteristic of government that prevents imposition of tort liability. Thus, a governmental entity should move for summary disposition pursuant to MCR 2.116(C)(8). If the defense of governmental immunity is raised on behalf of an individual employee, it is classified as an affirmative defense and should be raised pursuant to MCR 2.116(C)(7).

*Hoffman v Genesee Co,* 157 Mich App 1, 7-8; 403 NW2d 485 (1987), lv den 428 Mich 902 (1987).

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. The trial court must consider the pleadings, affidavits, depositions, and other documentary evidence, must give the benefit of any reasonable doubt to the nonmoving party, and must draw any reasonable inferences in favor of that party. The nonmoving party has the burden of proving that a genuine issue of material fact exists. Summary disposition is proper only if the trial court is satisfied that no factual development that is possible could justify recovery by the nonmoving party. The appellate court is liberal in finding that a genuine issue of material fact exists. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988); *Loftis v G T Products, Inc,* 167 Mich App 787, 790-791; 423 NW2d 358 (1988), lv den 431 Mich 895 (1988).

Plaintiff alleges that the municipal defendants acted with common knowledge and purpose in failing to adequately train police officers to recognize signs of intoxication and in failing to uphold the law by encouraging or directing police officers not to detain residents of Grosse Pointe Park suspected of driving under the influence of liquor and that this conduct, done under color of state law, deprived plaintiff's decedent of his civil rights, including his right to life, and thus constituted a violation of 42 USC 1983. Plaintiff also alleges that Officer Konefeke's actions in not detaining Conway constituted deliberate indifference to the rights of others, particularly the decedent's, and were grossly negligent and thus constituted a violation of 42 USC 1983.

Defendants argue that, because no special relationship existed between the municipality and the

decedent, the harm to the decedent was too remote a consequence of the alleged conduct of both the municipal defendants and Officer Konefeke for the conduct to be considered the proximate cause of the harm to the decedent. Therefore, defendants contend, their actions did not constitute a violation of 42 USC 1983. Defendants conclude that they were entitled to summary disposition pursuant to MCR 2.116(C)(8). We agree.

42 USC 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to sustain a cause of action under § 1983, the plaintiff must establish that: (1) the defendant acted under color of state law; (2) the conduct deprived the plaintiff of constitutional rights; and (3) the deprivation of rights occurred without due process of law. *Jones v Sherrill,* 827 F2d 1102, 1104 (CA 6, 1987).

Any cause of action brought in state court under 42 USC 1983 requires our review of federal law interpreting that federal statute. *Tilli v Northampton Co,* 370 F Supp 459, 460 (ED Pa, 1974). We are fortunate to have the recent United States Supreme Court opinion in *DeShaney v Winnebago Co Dep't of Social Services,* 489 US —; 109 S Ct 998; 103 L Ed 2d 249 (1989), to guide us in our resolution of the instant appeal.

In *DeShaney,* the Winnebago County Depart-

ment of Social Services received numerous complaints concerning alleged physical abuse inflicted on the minor, Joshua DeShaney, by his father, with whom the child resided. The department took limited steps to protect Joshua but did not remove the child from his father's custody. A subsequent beating inflicted by the father resulted in the child's being brain damaged and severely mentally retarded. Melody DeShaney, the child's mother and his guardian ad litem, filed a 42 USC 1983 action against the department, alleging that the department and its employees deprived Joshua of his liberty without due process of law, in violation of US Const, Am XIV, by failing to protect the child from a risk of violence at his father's hands of which they knew or should have known. The Supreme Court held that the actions and omissions of the department did not violate the child's due process right and, consequently, that no cause of action lay under § 1983. In arriving at this holding, the Court noted that the due process clause does not require a state to protect its citizens' lives, liberty and property against invasion by private actors. Nor does it require a state to guarantee a minimum level of safety and security. Instead, the clause serves to limit a state's power to act by forbidding a state itself to deprive individuals of life, liberty and property without due process of law. Its text cannot be read to impose an affirmative duty on the state to protect one individual from another or to impose liability for injuries that could have been prevented had the state chosen to provide protection. A state's failure to protect an individual against private violence does not violate the due process clause. The Court stated:

Petitioners contend, however, that even if the

Due Process Clause imposes no affirmative obligation on the State to provide the general public with adequate protective services, such a duty may arise out of certain "special relationships" created or assumed by the State with respect to particular individuals. . . . Petitioners argue that such a "special relationship" existed here because the State knew that Joshua faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and by deed, its intention to protect him against that danger. . . .

We reject this argument. It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. . . .

\*     \*     \*

But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. . . . The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. . . .

\*     \*     \*

Petitioners concede that the harms Joshua suffered did not occur while he was in the State's custody, but while he was in the custody of his

natural father, who was in no sense a state actor. While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua. [103 L Ed 2d 259-263.]

Therefore, we decline to recognize a 42 USC 1983 cause of action for a violation of a constitutional right where the claim arises from an allegation of a failure to protect prospective victims from the dangers posed by private parties, even where the party acting under the color of state law possesses some knowledge of an unspecified potential for harm. Likewise, we decline to recognize that a "special relationship" sufficient to establish liability under 42 USC 1983 is created when a police officer fails to arrest an allegedly intoxicated motorist and that motorist later injures a third party as a result of his intoxication. Under such circumstances the officer owes the injured party no greater duty than that owed the public at large. See *Gilchrist v City of Livonia*, 599 F Supp 260 (ED Mich, 1984), and *Simonds v Tibbitts*, 165 Mich App 480, 483; 419 NW2d 5 (1987). Accordingly, plaintiff failed to state a claim under 42 USC 1983 on which relief could be granted. All defendants are entitled to summary disposition pursuant to MCR 2.116(C)(8) on this issue.

Plaintiff also argues that defendants were negligent in that they breached a duty owed to the

decedent to detain Conway when she was discovered to be intoxicated. Plaintiff claims that defendants' conduct was the proximate cause of the injury suffered by the decedent.

Defendants argue that the City of Grosse Pointe Park and its officials are entitled to immunity from tort liability for activity related to the operation of a police force, which is a governmental function. Defendants also argue that Officer Konefeke breached no duty to the decedent. They state that, because a police officer owes a duty of protection to the public in general, and not to any particular person, no liability for breach of the duty attaches where an individual is injured because of the breach of duty unless a special relationship exists between the officer and the injured party. Defendants contend that no special relationship existed in this case and conclude that they were entitled to summary disposition pursuant to MCR 2.116(C)(8). We agree.

A governmental agency is immune from tort liability when "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1); MSA 3.996(107)(1). Our Supreme Court has defined a governmental function as "an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law," *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 620; 363 NW2d 641 (1984), and has specified that maintaining a police force is a governmental function. *Ross,* 420 Mich 625. Legislators and the highest executive officials at all levels of government are absolutely immune from tort liability when acting within their legislative or executive authority. *Ross,* 420 Mich 633. Thus, the City of Grosse Pointe Park and its officials are entitled to immunity from tort liability for activities related to the operation of the police force.

Plaintiff has failed to state a claim for negligence on which relief can be granted against these defendants. The municipal defendants are entitled to summary disposition pursuant to MCR 2.116(C)(8).

Plaintiff argues that, by failing to detain Conway, Officer Konefeke breached a duty to decedent and this breach of duty proximately caused the decedent's injuries. To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. A duty is a legally recognized obligation to conform to a particular standard of conduct towards another. Whether a duty exists is a question of law for the court. *Sierocki v Hieber*, 168 Mich App 429, 433; 425 NW2d 477 (1988).

Generally, a public official's duty is owed to the public and not to any specific individual in society. *Rose v Mackie*, 22 Mich App 463, 467-468; 177 NW2d 633 (1970), lv den 383 Mich 787 (1970). In *Simonds*, 165 Mich App 482, a police chief and his employer village were sued because the police chief failed to arrest or detain an allegedly visibly intoxicated motorist or disable the motorist's vehicle after finding him and his vehicle in a ditch. The allegedly intoxicated motorist subsequently freed his vehicle from the ditch and thereafter crossed a center line and struck another vehicle head-on, killing the occupant of the other vehicle. The plaintiff alleged that the police officer had a statutory duty under MCL 257.625; MSA 9.2325 to arrest the allegedly intoxicated motorist or otherwise prevent him from operating his vehicle. *Id.* The plaintiff argued that the officer's observation of the motorist in an intoxicated condition created a "special relationship" between the officer and

the motoring public, including the decedent, under which the officer owed a special duty to any motorist injured by the intoxicated motorist. *Id.* at 483. This Court rejected the plaintiff's argument and held that the officer owed no duty to the decedent. *Id.* at 483-484. This Court stated:

> We note that one state has adopted plaintiff's argument that the statutory scheme outlining a police officer's duty to arrest drunk drivers creates a "special relationship" with the injured party. *Irwin v Town of Ware,* 392 Mass 745; 467 NE2d 1292 (1984). Anno: *Failure to restrain drunk driver as ground of liability of state or local government unit or officer,* 48 ALR4th 320, § 4, pp 332-333. However, generally a police officer's duty to restrain intoxicated motorists, being a duty owed to the public generally, does not create liability for an individual's injury arising from its breach. 48 ALR4th 320, § 3, p 330. We decline to adopt a broader view. [*Id.* at 483; See also *Hobrla v Glass,* 143 Mich App 616, 625; 372 NW2d 630 (1985).]

Plaintiff argues that Officer Konefeke's observation of Conway in an intoxicated state created a special relationship between Officer Konefeke and the general public, particularly decedent, pursuant to which Officer Konefeke owed a duty to the decedent to detain Conway and prevent her from causing harm. For support, plaintiff cites a police officer's statutory power to take a publicly incapacitated person into custody, MCL 333.6501(1); MSA 14.15(6501)(1).

We have previously rejected the argument put forth by plaintiff, *Simonds, supra,* and do so again in this case. A police officer's duty to restrain intoxicated motorists extends to the public in general. No liability attaches for injury caused to any particular individual. *Simonds,* 165 Mich App 483. Because Officer Konefeke owed no duty to the

decedent, plaintiff has failed to state a claim for negligence on which relief can be granted. Officer Konefeke is entitled to summary disposition pursuant to MCR 2.116(C)(8).

Defendant Konefeke asserts that he is entitled to governmental immunity under *Ross, supra.* Lower-level government employees are entitled to immunity from tort liability when they are

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
>
> 2) acting in good faith; and
>
> 3) performing discretionary, as opposed to ministerial acts. [*Ross,* 420 Mich 633-634.]

In *Zavala v Zinser,* a companion case to *Ross,* the plaintiff was shot and severely injured when he attempted to stop a fight outside a Detroit bar. The plaintiff's brother was involved in the altercation. At the time of the shooting, two City of Detroit police officers were parked nearby in their marked police cruiser. *Ross,* 420 Mich 657. All parties agreed that the officers did not sit idly while the fight occurred. Instead, the officers decided they were unable to control the crowd without assistance and immediately called for backup. The shooting occurred while the officers waited for assistance to arrive. *Id.* at 659. Subsequently, the plaintiff brought suit against the officers, alleging the existence of a special relationship between the plaintiff and the officers giving rise to a duty of care owed to the plaintiff. *Id.* at 658. The trial court granted summary disposition in favor of the officers. A panel of our Court affirmed the decision of the trial court. Our Supreme Court also affirmed. In so doing, our Supreme Court declined to decide the "public duty" issue or to determine

whether the "special relationship" allegations were legally sufficient. *Id.* at 659. Instead, the Court concluded that the officers were entitled to immunity from tort liability. The Court stated:

> Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. *The determination of what type of action to take, e.g., make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity.* [*Id.* at 659-660. Emphasis added.]

In *Morse v City of Mt Pleasant,* 160 Mich App 741, 742-743; 408 NW2d 541 (1987), rev'd 431 Mich 887 (1988), two police officers for the City of Mt. Pleasant came upon Kenneth Morse and two of his friends in an alley within the City of Mt. Pleasant. Morse was visibly intoxicated. Instead of taking Morse into protective custody, the officers left him in the company of his two companions. The companions later abandoned him, and Morse died of suffocation because he had been left lying unconscious with his mouth and nose pressed to the ground. *Id.* The decedent's parents brought suit against the officers. The trial court granted the officers summary disposition on the grounds of governmental immunity. A panel of this Court reversed, concluding that MCL 333.6501(1); MSA 14.15(6501)(1) required the officers to take the decedent into protective custody, that no discretion was left to the officers upon encountering an incapacitated person in a public place, and that, absent such discretion, no immunity was provided under

*Ross. Id.* at 745. Our Supreme Court reversed this Court's decision, for the reasons contained in Judge SAWYER's dissent. 431 Mich 887 (1988).

In his dissent, Judge SAWYER relied on the above-quoted language in the *Zavala* portion of *Ross,* 420 Mich 659-660. He stated:

> I disagree with [the majority's] reasoning when they conclude that the police officers were performing *ministerial* acts as opposed to discretionary acts and, therefore, were not entitled to governmental immunity. It is clear from the record that defendant police officers were faced with the decision whether to place the decedent in protective custody or to allow the decedent's friends to accompany him home. If they had decided to invoke MCL 333.6501; MSA 14.15(6501), they would have had to follow the statute and, therefore, be bound by the mandatory language found therein. It seems clear, however, that the determination of what type of action to take is discretionary-decisional and is precisely the type of action that governmental immunity was designed to protect. [*Morse,* 160 Mich App 748.]

We believe Officer Konefeke is entitled to immunity under *Ross.* In the course of his employment as a police officer for the City of Grosse Pointe Park, he stopped Conway and issued her a citation for driving through a red light. Such action was within the scope of his authority. MCL 257.611; MSA 9.2311. Just prior to the traffic stop, Officer Konefeke observed Conway perform a "rolling stop" at an intersection free of traffic, against a red light, which led him to believe that Conway was aware of the red light but was in a hurry to arrive at her intended destination. After he stopped her, Conway informed Officer Konefeke that she was in a hurry for reasons too difficult to

explain. Conway spoke coherently and there was nothing in her behavior or demeanor that suggested to Officer Konefeke that Conway was intoxicated. He detected no odor of alcohol emanating from her.[1] He observed no alcoholic beverage containers in the vehicle. Consequently, he ticketed Conway but did not detain her. We believe Officer Konefeke's actions were undertaken in good faith. Finally, Officer Konefeke's decision not to detain Conway was discretionary-decisional in nature. *Ross,* 420 Mich 659-660. Officer Konefeke is entitled to summary disposition pursuant to MCR 2.116(C)(7).

For the reasons stated, we reverse the trial court's denial of defendants' motions for summary disposition and remand the case to the trial court for further proceedings on the remaining issues of any alleged intentional nuisances which may exist.

Reversed and remanded. We do not retain jurisdiction of this case.

---

[1] Conway admitted to consuming nearly an entire bottle of wine after being stopped and ticketed by Officer Konefeke.