*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF LAKE JACOBSON, by MARK F.
JACOBSON, Personal Representative,

        Plaintiff-Appellee/Cross-Appellee,

v

MATTHEW HORNBECK and SAMUEL
BRADLEY,

        Defendants-Appellants,

and

SAKSTRUP TOWING, INC.,

        Defendant-Cross-Appellant.

UNPUBLISHED
July 22, 2021

No. 352976
Washtenaw Circuit Court
LC No. 18-001109-NI

---

ESTATE OF LAKE JACOBSON, by MARK F.
JACOBSON, Personal Representative,

        Plaintiff-Appellee,

v

MATTHEW HORNBECK and SAMUEL
BRADLEY,

        Defendants,

and

SAKSTRUP TOWING, INC.,

        Defendant-Appellant.

No. 353862
Washtenaw Circuit Court
LC No. 18-001109-NI

---

-1-

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

This consolidated appeal arises out of a traffic accident that occurred in December 2017, when a car driven by Desten Houge collided head-on with a car driven by Lake Jacobson, killing Houge instantly and fatally injuring Lake Jacobson. Mark Jacobson, personal representative of the plaintiff estate, was Lake Jacobson's husband. About an hour before the fatal collision, defendants Sergeant Matthew Hornbeck and Officer Samuel Bradley, both of the Pittsfield Township Police Department, had responded to a slide-off involving Houge's car, and defendant Sakstrup Towing, Inc., had sent a wrecker to pull Houge's car out of the ditch. The fatal head-on collision occurred moments after Houge got back on the road. Plaintiff filed a negligence action against defendants, claiming that they were negligent for putting Houge back on the road.

In Docket No. 352976, defendant officers appeal as of right the February 19, 2020 order denying their motion for summary disposition under MCR 2.116(C)(7) (governmental immunity), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). In Docket No. 353862, defendant Sakstrup appeals by leave granted the March 12, 2020 order denying its motion for summary disposition on the basis of judicial estoppel. Sakstrup also challenges the trial court's February 19, 2020 denial of its motion for summary disposition under MCR 2.116(C)(8) and (C)(10). We consolidated these appeals administratively.[1] For the reasons stated below, we reverse in part, vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

At approximately 4:19 p.m. on December 30, 2017, Hornbeck was dispatched to the scene of a car that had left the roadway, hit a sign, skidded through a ditch, and ended up partially in a culvert. The car was driven by Houge. Bradley arrived at approximately 4:28 p.m., and joined Hornbeck, who was talking to Houge. A wrecker driven by Eric Downs was dispatched to the scene from Sakstrup Towing, the police contracted towing company. According to the deposition testimony of the two defendant officers, neither detected any signs of intoxication or impairment when they talked to Houge. Bradley testified that when he arrived at the scene, Houge was standing up straight, standing and walking "fine," his speech was not slurred, his eyes were not bloodshot, and his pupils were neither "pinpoint" nor dilated.

Downs testified that when he arrived, he saw that the back end of Houge's car was a little off the ground because the front end was in a culvert, the bumper cover had come off completely, and there was cosmetic damage to the car, but he could not tell if the cosmetic damage had preceded the slide-off or been caused by the slide-off. Downs said that the car was in poor condition, a real "beater." Downs further testified that he inspected the car to determine how best to recover it. He saw that a sway bar link was broken, but it was rusty and looked like it had been

---

[1] *Estate of Lake Jacobson v Matthew Hornbeck*, unpublished order of the Court of Appeals, entered August 31, 2020 (Docket No. 353862).

broken for some time. He recalled that the wheels were straight, and that he got on his back to look under the vehicle, but he saw no damage and nothing hanging, other than the sign the car had struck. The sign was not attached to the car, and he pulled it out from under the car. Downs said that after he recovered the car, he did a post recovery check to make sure nothing was hanging or leaking. He recalled that the wheels were straight, that he detected no front-end damage, and that he looked at the front steering components, the tie rods and control arms, and saw nothing out of order. He recommended to Houge that he go to a car wash and spray out his wheels because they were packed with snow. Downs watched the car for about 30 yards as Houge left the runoff site, and everything seemed to be fine.

Approximately 1,000 feet from the site of the slide-off, Houge collided head-on with the car driven by plaintiff's decedent, Lake Jacobson. According to an eyewitness, the front end of the vehicle was damaged, the vehicle was rocking side to side, the wheels were coming off the ground, and there was no evidence that Houge was braking. Houge's car went into the opposite lane, narrowly missed another oncoming car, and then crashed head-on into the car driven by Lake Jacobson. A postmortem toxicology report issued in January 2018 revealed that Houge had a blood alcohol content of 0.242%.

In a two-count negligence complaint filed against the officers and Sakstrup, plaintiff alleged that the officers willfully disregarded numerous visible signs that Houge was intoxicated, signs that plaintiff alleged were clearly evident on the officers' dash-cam videos of the incident. Instead of responding to these indicia of intoxication and using the investigative tools at their disposal to confirm that Houge was intoxicated and respond accordingly, the officers allowed Houge to get back on the road in a car that had been obviously and severely damaged in the slide-off, thus, creating "a high risk of severe danger of serious injury or death." Plaintiff asserted that Sakstrup was vicariously liable for its employee's failure to properly inspect the vehicle and report its condition to the officers, as well as for Sakstrup's own alleged failure "to properly train, implement, and enforce rules" to ensure that wrecker operators properly performed inspections "to prevent dangerously damaged vehicles from being placed on the public roadway." Plaintiff asked for a $50 million judgment against defendants.

The officers moved for summary disposition under MCR 2.116 (C)(7), (C)(8), and (C)(10), asserting that that they were entitled to governmental immunity because, under the public-duty doctrine, their duty was to the public, not to any individual member of the public. And even if they did owe a duty to the decedent, their actions were neither grossly negligent nor the proximate cause of the decedent's injuries.

Sakstrup moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that its tow truck driver lacked the legal authority to retain Houge's car after Houge paid him for pulling the car out of the ditch and that, to the extent there was a cognizable cause of action for "placing a dangerously damaged vehicle on the public roadway," there was no competent evidence to dispute Downs's deposition testimony that he did not return Houge's car to the roadway, but to a sidewalk next to the roadway.

Plaintiff argued in opposition to the officers' motion for summary disposition that the public-duty doctrine applied only in limited circumstances, not to routine matters such as responding to a traffic crash and identifying an intoxicated driver, and not to the officers'

misfeasance of putting an obviously intoxicated driver back on the road and creating a "zone of danger" for other motorists. Plaintiff further argued that the special-relationship exception to the public-duty doctrine precluded application of the doctrine because a special relationship existed between a police officer and a drunk driver that the officer allowed to continue driving on public roads after a crash. Plaintiff argued in the alternative that the public-duty exception should be abrogated as inconsistent with the Government Tort Liability Act (GTLA), MCL 691.1401 *et seq*.

As to the officers' assertion of governmental immunity, plaintiff contended that the officers lacked the discretion to allow an intoxicated driver to continue driving, especially since adoption of the National Highway Traffic Safety Administration (NHTSA) standards and techniques for identifying intoxicated drivers, and using standardized field sobriety testing. The officers' complete disregard of their training and allowing Houge to get back on the road was gross negligence. And, because the officers had control of Houge and his car at the first crash site and could have prevented the second crash by not putting Houge back on the roadway, despite the foreseeability of a catastrophic injury, the officers' gross negligence was the proximate cause of the decedent's fatal injuries.

The gravamen of plaintiff's response in opposition to Sakstrup's motion for summary disposition was that Downs breached the duty to use reasonable care in recovering Houge's car by failing to determine whether Houge's car was roadworthy after pulling it from the ditch, failing to inform police of obvious damage that would have made the car a danger to drive, and failing to request a tow order from the police.

At the hearing on the summary disposition motions, the parties' arguments were generally consistent with their briefs. Sakstrup, however, advanced the additional argument that a duty did not flow to the decedent from its oral contract with Houge; therefore, it had no duty to act to protect the decedent, and, accordingly, could not be liable in tort for her fatal injuries.

The trial court denied the officers' motion because it thought the public-duty doctrine needed revisiting in light of judicial criticisms from prior decisions of the Supreme Court and this Court and adoption of the NHTSA standards, training, and requirements referred to by plaintiff. The court also suggested that this is a case of malfeasance, rather than nonfeasance: the officers did not fail to make an arrest, they took affirmative action to put someone back on the road who should not have been there. The court further suggested that the officers' actions created questions of fact regarding whether they acted with gross negligence, and that the case involved questions of "who knew what and when," which depended on credibility assessments, all of which were questions for the trier of fact to resolve. As to Sakstrup, the court indicated that it was denying the tow company's motion because "as to the issue of duty, the contract where you had a duty to inspect and report, I think that is something under basic tort law can [sic] go to a jury on that question. And as to the other statements, then, I think those are questions of fact." The court issued an order denying the two motions for summary disposition for the reasons stated on the record.

Subsequently, Sakstrup moved for summary disposition on the basis of judicial estoppel, contending that plaintiff had successfully argued that the officers' conduct was "*the* proximate cause of the subject accident," and, therefore, that judicial estoppel precluded plaintiff from contradicting its representations by asserting that Sakstrup was a proximate cause. The trial court

rejected Sakstrup's argument, explaining that the court understood "the proximate cause" in a case involving governmental immunity as being the predominant cause, not the only cause. The trial court entered an order denying Sakstrup's motion for defendant and, approximately two months later, an order staying the case pending appeals.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition, see *Estate of Voutsaras by Gaydos v Bender*, 326 Mich App 667, 671; 929 NW2d 809 (2019), as well as whether a duty exists, see *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), and a trial court's decision involving equitable actions, *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012).

The officers moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). They argue on appeal that the trial court erred by denying their motion under subrules (C)(7) and (C)(8). "MCR 2.116(C)(7) permits summary disposition where the claim is barred by immunity." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The moving party may, but is not required to, support its motion under MCR 2.116(C)(7) by "affidavits, depositions, or other documentary evidence." *Id.* "[T]he court must consider the affidavits and other supplementary papers filed by the parties." *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Courts must construe the allegations in the light most favorable to the nonmoving party, see *Maiden*, 461 Mich at 119, which includes making all reasonable inferences or conclusions that can be drawn from the facts alleged in the nonmoving party's favor, *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013).

### B. DOCKET NO. 352976

Defendant officers contend that the trial court erred by denying their motion for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(8). We agree.

The officers contend that they are entitled to summary disposition under MCR 2.116(C)(8) on the basis of application of the public-duty doctrine. The public-duty doctrine provides

> that if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. [*White v Beasley*, 453 Mich 308, 316; 552 NW2d 1 (1996) (opinion by BRICKLEY, C.J.), quoting 2 Cooley, Torts (4th ed), § 300, pp 385-386.]

"Applied to police officers, the public-duty doctrine insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception." *White*, 453 Mich at 316. To determine whether a special relationship exists between an officer and an individual plaintiff, the Michigan Supreme Court adopted the *Cuffy* test, set forth by the New York Court of Appeals in *Cuffy v City of New York*, 69 NY2d 255; 513 NYS 2d 372; 505 NE2d 937 (1987). *Id*. at 313. The *Cuffy* test requires the following four elements to be met:

> (1) an assumption by the [police officer], through promises or actions, of an affirmative duty to act on behalf of the party who was injured;

> (2) knowledge on the part of the [police officer] that inaction could lead to harm;

> (3) some form of direct contact between the [police officer] and the injured party; and

> (4) that party's justifiable reliance on the [police officer's] affirmative undertaking. [*Id*. at 320 (quotation marks and citation omitted).]

Our Supreme Court acknowledged that the test was "somewhat arbitrarily restrictive," but also recognized that, "[b]ecause of the unusual and extraordinary nature of police work it is unfair to allow a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty." *Id*. at 320-321 (quotation marks and citation omitted). The Court stated that this test "responds to these concerns by insulating police officers from liability arising from their tortious on the job conduct in almost all instances where a plaintiff alleges a failure to provide police protection." *Id*. at 321. At the same time, the test "provides plaintiffs some relief in the particularly egregious case of an officer promising police protection, but negligently carrying out that promise." *Id*.

In *Beaudrie v Henderson*, 465 Mich 124, 126; 631 NW2d 308 (2001), the Michigan Supreme Court declined to extend the public-duty doctrine to protect government employees other than police officers, "given the comprehensive governmental immunity statute, MCL 691.1407". Nevertheless, the Court stated that it would "continue to apply the public-duty doctrine, and its concomitant 'special relationship' exception, in cases involving an alleged failure to provide police protection." *Id*. at 140-141. The Supreme Court further noted that "application of the public duty doctrine is limited to cases like *White* involving an alleged failure of a police officer to protect a plaintiff from the criminal acts of a third party." *Id*. at 141-142.

This Court has applied the doctrine to facts similar to those presented in the present appeal. For example, at issue in *Simonds v Tibbitts*, 165 Mich App 480, 482; 419 NW2d 5 (1987), was whether the defendant, Officer Brian Tibbitts, was liable to the plaintiff for his earlier failure to arrest or detain an intoxicated driver, Lyndon Risner, who drove head-on into the car driven by the plaintiff's husband, killing the husband. Shortly before the fatal collision, Tibbitts had encountered Risner's car in a ditch and observed that he was visibly intoxicated, but Tibbitts did not arrest or detain him. *Id*. The plaintiff claimed that Tibbitts had a duty to arrest Risner or otherwise prevent him from driving, that Tibbitts breached that duty, and that his breach was the

proximate cause of the plaintiff's husband's death. *Id*. The trial court granted summary disposition in favor of the defendant under MCR 2.116(C)(8), finding that Tibbitts's "duty was to the public at large and not to any individual." *Id*.

This Court affirmed, holding "that Tibbitts had no legal duty to [the plaintiff's husband]." *Id*. We said that it was "clear that a police officer's duty to preserve the peace is owed to the general public, not to any one individual." *Id*. at 483. The plaintiff argued that Tibbitts's earlier observation of Risner in an intoxicated state "created a 'special relationship' between defendant and the motoring public, including [her husband] under which defendant owed a special duty to any motorist injured by Risner." *Id*. In support of her argument, the plaintiff cited "the officer's statutory power to place a publicly incapacitated person under arrest . . . and power to arrest a motorist who causes an accident while driving intoxicated." *Id*. Noting that one state had adopted the plaintiff's "special relationship" argument, we nevertheless declined to do so, observing that, in general, a police officer's duty to arrest a drunken driver was owed to the public generally, and did not "create liability for an individual's injury arising from its breach." *Id*. Further, MCL 257.625 was permissive, providing "that an officer *may* arrest, without a warrant, a person he has reasonable cause to believe was operating a motor vehicle while under the influence of alcohol on a public highway at the time of an accident." *Id*. at 483-484. This Court observed that "[t]he permissive nature of the statute does not create an actionable legal duty to individual third parties." *Id*. at 484. Because Tibbitts did not owe a duty to plaintiff's husband, individually, this Court affirmed the trial court's grant of summary disposition. *Id*. at 482, 484. See also *Markis v City of Grosse Pointe Park*, 180 Mich App 545; 448 NW2d 352 (1989) (applying the doctrine to similar facts).

Plaintiff offers a number of arguments against the applicability of the public-duty doctrine in the present case. Plaintiff argues that the public-duty doctrine does not abolish the officers' duty to act with reasonable care. This is true, but it misses the point. The public-duty doctrine is not about the nature of the duty owed by police officers, but to whom that duty is owed. See *Marcelletti v Bathani*, 198 Mich App 655, 664; 500 NW2d 124 (1993).

Plaintiff also argues that the public-duty doctrine does not apply to gross negligence in response to a traffic crash because the officers were not acting in a "crime-fighting" capacity. The *Beaudrie* Court observed that application of the public-duty doctrine is appropriate in cases "involving an alleged failure of a police officer to protect a plaintiff from the criminal acts of a third party." *Beaudrie*, 465 Mich at 141. In the present case, although Hornbeck and Bradley may have been acting less as crime fighters than as public safety officers when they responded to Houge's slide-off, according to plaintiff's allegations, they were confronted with evidence that Houge was driving while intoxicated,[2] arguably requiring them to assume at least aspects of their crime-fighting role and arrest or otherwise keep Houge off the road. In addition, notwithstanding plaintiff's assertion that this case is about the officers' misfeasance in putting Houge back on the road, this alleged misfeasance is intertwined with plaintiff's multiple allegations that the officers

---

[2] MCL 257.625(1) prohibits driving while intoxicated, as defined by the statute. Violation of MCL 257.625(1) constitutes at least a misdemeanor, MCL 257.625(9)(a), and may constitute a felony, depending on one's prior history, MCL 257.625(9)(c).

committed nonfeasance by failing to detect signs of Houge's intoxication and failing to employ the investigative tools and confirmatory tests that plaintiff believes would have compelled them to remove Houge from the road.

Plaintiff further argues that the public-duty doctrine is inapplicable because a special relationship existed between the officers and Houge that extended to plaintiff. This assertion is at odds with the *Cuffy* test, which looks only to the relationship between the officer and the victim, not the officer and the perpetrator.

Lastly, plaintiff argues that the public-duty doctrine is inapplicable because the purposes of the doctrine are not implicated in this case, the doctrine is outdated since the original purposes of the doctrine are at odds with the officers' current lack of discretion to allow a person to drive while intoxicated, and a judicially created immunity for those subject to the GTLA "undermines the role of the Legislature and disrespects separation of powers principles." The *White* Court observed that the public-duty doctrine shields police officers from a jury of laypeople with 20/20 hindsight second-guessing the exercise of the officers' discretionary professional duty. *White*, 453 Mich at 321. In our view, this purpose is served by application of the public-duty doctrine in the instant case. As to whether the public-duty doctrine should be abandoned because it is outdated or inconsistent with the GTLA, the latter position is essentially that taken by Justice LEVIN in his dissent in *White*, and which at least five justices rejected by affirming the applicability of the public-duty doctrine. See *White*, 453 Mich at 360 (LEVIN, J., dissenting). In addition, the Supreme Court reaffirmed the validity of the doctrine as applied to police officers in *Beaudrie*, 465 Mich at 133-134. "This Court is bound to follow the precedent of the Supreme Court." *Maier v Maier*, 311 Mich App 218, 222-23; 874 NW2d 725 (2015).

We conclude that the trial court erred by denying the officers' motion summary disposition under MCR 2.116(C)(8). The public-duty doctrine applies in Michigan and operates to insulate police officers "from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception." *White*, 453 Mich at 316 (opinion by BRICKLEY, C.J.). Plaintiff's first amended complaint contains no allegation that a special relationship existed between plaintiff and defendant officers, and plaintiff has failed to establish that the officers owed a duty to the decedent. Therefore, even construing the allegations in the light most favorable to plaintiff, and making all reasonable inferences in plaintiff's favor, defendant officers are entitled to summary disposition under MCR 2.116(C)(8) on the basis of the application of the public-duty doctrine.

Were we to hold that the officers owed a duty to the decedent and that their conduct constituted gross negligence, we would conclude nevertheless that the officers were immune from liability under the GTLA and, therefore, that the trial court erred by denying the officers' motion for summary disposition under MCR 2.116(C)(7). Under the GTLA, government employees may be liable for grossly negligent conduct only if that conduct is "the proximate cause of the injury or damage." MCL 691.1407(2). For purposes of the GTLA, "the proximate cause" must be "the one most immediate, efficient and direct cause preceding the injury." *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). Therefore, it is insufficient if the defendant's actions are simply "a" proximate cause. See *Ray v Swager*, 501 Mich 52, 75; 903 NW2d 366 (2017). The issue of proximate cause is typically a question of fact for the jury. See *Helmus v Dep't of Transp,* 238 Mich App 250, 256; 604 NW2d 793 (1999). Only when the facts are not disputed and when

reasonable minds could not differ is proximate cause a question of law for the court. See *Robinson*, 462 Mich at 463.

Plaintiff argues that the act of placing an intoxicated driver on a busy thoroughfare in a damaged car was the final event before the crash and, therefore, the negligence closest in time to Houge's collision with the decedent. However, plaintiff's argument does not account for the fact that both officers left the scene before Downs completed recovery of Houge's car and that Houge voluntarily chose to drive his car away from the scene.

Plaintiff further argues that the officers were more culpable than Houge, and that when reasonable minds may differ regarding comparative blame, the question is one for the jury. More than one proximate cause may contribute to an injury. See *Ray*, 501 Mich at 65. "However, under the GTLA, [the Michigan Supreme Court has] held that when assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury . . . .' " *Id*. (citation omitted; second alteration in original). In the present case, it is undisputed that Houge got in his car and voluntarily drove off. The one most immediate, efficient, and direct cause of the decedent's injuries was not what the officers did, but what Houge did once he got into his car and on the road. See *id*. at 59. A reasonable jury could find that the officers' gross negligence was the proximate cause of the decedent's fatal injuries only if it ignores the voluntary actions of Houge. Accordingly, even if the officers' conduct constituted gross negligence, because their gross negligence was not the proximate cause of the decedent's injuries, the trial court erred by denying the officers' summary disposition under MCR 2.116(C)(7).

For the reasons stated, we conclude that the trial court erred by denying the officers' summary disposition under MCR 2.116(C)(7) and (C)(8). We reverse that portion of the trial court's February 19, 2020 order denying the officers' motion for summary disposition and remand to the trial court for entry of summary disposition in favor of the officers.

## C. DOCKET NO. 353862

Sakstrup argues that, because it did not have a special relationship with the decedent under the common law, it did not have a duty to act affirmatively on the decedent's behalf and, therefore, that the trial court erred by denying its motion for summary disposition. Sakstrup's attorney argued at the hearing on its summary disposition motion that no duty flowed to decedent from its oral agreement with Houge, and the trial court appears to have denied Sakstrup's motion after commenting on Sakstrup's duty to Houge. However, for the reasons explained later, the trial court did not use the proper legal framework to determine whether Sakstrup owed a common-law duty to the nonpresent, third-party decedent.

Sakstrup contends that it did not have a special relationship with the decedent and, therefore, did not owe her a duty to act affirmatively on her behalf. This is undisputed. Plaintiff suggests that Sakstrup had a special relationship with Houge because Sakstrup, along with the officers, exercised control over him and his vehicle, but this suggestion is unavailing. At common law, a special relationship of the type that obligates one person to control the conduct of another arises from relationships between persons, such as parent/child or master/servant. See, e.g., Restatement (Second) of Torts, §§ 316-319. Plaintiff provides no evidence that Sakstrup, through

Downs, had any control over Houge, and no authority for the proposition that a special relationship arises when one person has authority over another person's possessions. See *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984) (observing that an appellant may not give issues cursory treatment with little or no citation of supporting authority).

However, Sakstrup seems to overlook that a duty of care may arise "between a party to a contract and a noncontracting third party." *Loweke*, 489 Mich at 162. The threshold question is " 'whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.' " *Id.* at 166, quoting *Fultz v Union-Commerce Assoc*, 470 Mich 460, 469-70; 683 NW2d 587 (2004). A defendant breaches "a duty owed to the plaintiff that was separate and distinct from its contractual obligations when it create[s] a 'new hazard' in carrying out its" contractual duties. *Loweke*, 489 Mich at 167. The *Loweke* Court clarified *Fultz*'s holding by explaining that "a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract." *Id*. at 159.

In *Loweke*, the plaintiff was an employee of an electrical subcontractor on a construction project, and the defendant was a carpentry and drywall subcontractor on the project. *Id*. The defendant's employees had leaned several sheets of cement board against a wall in a hallway where the plaintiff was working. *Id*. at 160. When the boards started to fall, plaintiff tried to catch them, but they fell on his leg and injured him. *Id*. The plaintiff sued the defendant, "alleging that defendant was negligent in stacking the cement boards in an unstable position, creating a new hazard that previously did not exist." *Id*. at 161. The defendant moved for summary disposition, asserting that it was not liable to the plaintiff in tort because the plaintiff's allegations were based on an assertion that the defendant "negligently performed its contractual obligations to the general contractor and, thus, were not based on any separate and distinct duty" that defendant owed to plaintiff." *Id*. The trial court granted the defendant's motion for summary disposition, and this Court affirmed. *Id*.

The Michigan Supreme Court reversed, noting that "courts should not permit the contents of the contract to obscure the threshold question of whether any independent legal duty to the noncontracting third party exists, the breach of which could result in tort liability." *Id*. at 171. The Court indicated that performance of a contractual act did not relieve a defendant of "its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings." *Id*. at 172. The Court remanded the matter to the trial court for consideration whether the defendant owed the plaintiff a duty as explained in *Loweke*. *Id*.

In the present case, the trial court said regarding Sakstrup: "I think that as to the issue of duty, the contract where you had a duty to inspect and report, I think that is something under basic tort law can [sic] go to a jury on that question." The meaning of the trial court's statement is not entirely clear. However, even if Sakstrup, through its employee, did negligently perform its oral contract with Houge, it only owes a duty to the nonpresent, third-party decedent if, by recovering Houge's vehicle, Sakstrup "created a 'new hazard.' " *Id*. at 167. To determine whether this duty to avoid creating a new hazardous condition applies in the instant case, a trial court should consider factors such as "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 661;

822 NW2d 190 (2012) (quotation marks and citation omitted); see also *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997); *Buczkowski v McKay*, 441 Mich 96, 100; 490 NW2d 330 (1992); *Moning v Alfono*, 400 Mich 425; 254 NW2d 759 (1997).

Because the trial court did not use the proper legal framework to determine the threshold question whether Sakstrup had a duty to the decedent, we vacate that portion of the trial court's February 19, 2020 order denying Sakstrup's motion for summary disposition and remand the matter to the trial court for proper analysis of whether Sakstrup had a duty to the decedent.

Sakstrup raises two additional issues on appeal, neither of which has merit. First, Sakstrup asks this Court to conclude that retaining Houge's car after he paid for its recovery would have constituted conversion. Plaintiff has not argued that Sakstrup should simply have kept Houge's car, but assumes one of two things: either there was serious, visible damage to Houge's car that Downs should have noticed—or did notice—and should have reported to the police and asked for a tow order, or that Downs should have asked for a tow order to arrange for a mechanical inspection of the car to ensure that it was roadworthy. Agreeing or disagreeing with Sakstrup would not resolve any of the disputed issues.

Next, Sakstrup asserts that the trial court erred when it denied its motion for summary disposition on the basis of judicial estoppel. We disagree.

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn*, 296 Mich App at 479 (quotation marks and citation omitted). "Under the 'prior success model' of judicial estoppel, 'a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.' " *Id*. at 480, quoting *Pashke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). "[T]he mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true." *Spohn*, 296 Mich App at 480 (quotation marks and citation omitted). This " 'does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits.' " *Id*., quoting *Reynolds v Internal Revenue Comm'r*, 861 F2d 469, 473 (CA 6, 1988). "It means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Reynolds*, 861 F2d at 473.

Sakstrup contends that plaintiff successfully argued that the officers were "the proximate cause" of the decedent's fatal injuries such that he cannot now argue that Sakstrup is a proximate cause of the decedent's injuries. This is incorrect. At best, the trial court's denial of defendant officers' motion for summary disposition indicates that the trial court agreed with plaintiff that genuine issues of material fact remain regarding whether the officers were entitled to summary disposition. The court indicated as much when it said that, on the basis of the various questions of fact regarding the officers' interaction with Houge, a reasonable juror could find that the officers' conduct at the first crash constituted gross negligence that was the proximate cause of the decedent's injuries. The court's finding of genuine issues of material fact regarding whether the officers were entitled to governmental immunity was not a finding that the officers were "the proximate cause" of the decedent's injuries and, therefore, does not render plaintiff's argument

-11-

that Sakstrup proximately caused the decedent's injuries "wholly inconsistent." Accordingly, we affirm the trial court's order of March 12, 2020.

In conclusion, as to the trial court's order of February 19, 2020, in Docket No. 352976, we reverse that part of the order denying defendant officers' motion for summary disposition and remand for entry of summary disposition in favor of the officers, and in Docket No. 353862, we vacate that portion of the same order denying Sakstrup's motion for summary disposition. Also in Docket No. 353862, we affirm the trial court's March 12, 2020 order denying Sakstrup's motion for summary disposition on the basis of judicial estoppel.

Reversed in part, vacated in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens